UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

WILLIE LOVELACE III,

    Plaintiff,

    v.                                                                   Case No. 04-C-1164

JO ANNE B. BARNHART,
Commissioner of the Social Security Administration,

    Defendant.

_____

O R D E R

This is an action for judicial review of the final decision of the Commissioner of Social Security, denying plaintiff's application for disability insurance benefits. The plaintiff argues that the Administrative Law Judge ("ALJ") who held a hearing on the plaintiff's claim gave no explanation for his credibility finding and improperly omitted from the RFC the plaintiff's need to elevate her leg throughout the day. Because the ALJ set forth a reasonable justification for rejecting the plaintiff's alleged limitations, the court finds that the ALJ's decision is supported by substantial evidence.

BACKGROUND

The plaintiff has been diagnosed with obesity, sleep apnea, hip pain, and high blood pressure, and he alleges disability since March 2001 after he was laid off from work. On January 17, 2003, ALJ Guy Fletcher held a hearing on the plaintiff's claim for benefits. On June 21, 2003, the ALJ issued a written decision finding that the plaintiff was not under a disability. The ALJ determined that the plaintiff had the residual functional capacity to perform a full range of sedentary work provided that the plaintiff is provided the opportunity to change positions every 45 minutes and that the plaintiff is not required to stand more than two hours in an eight-hour workday. The ALJ determined that there were a significant number of jobs that he could perform, including "select assembly, inspector and security monitor positions," and that he was not disabled and not entitled to disability insurance benefits. (Tr. 18.) The ALJ's decision became the final decision of the Commissioner after the Appeals Council denied his request for review. The plaintiff filed this action in federal court appealing the Commissioner's decision. The issues are fully briefed.

ANALYSIS

The court reviews an ALJ's decision that an applicant is not disabled for substantial evidence. 42 U.S.C. § 405(g); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind

- 2 -
Case 2:04-cv-01164-JPS   Filed 07/27/05   Page 2 of 14   Document 23

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court reviews the record as a whole but does not reweigh the evidence or substitute its judgment for that of the ALJ. *Jens*, 347 F.3d at 212. However, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). While written evaluation of every piece of evidence on claim for social security disability benefits is not required, the ALJ must sufficiently articulate his or her assessment of evidence to assure reviewing court that ALJ considered important evidence and to enable court to trace path of ALJ's reasoning. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).

I. Treating physician

The plaintiff argues that the ALJ improperly rejected the opinions of Dr. Hussamaddin Al-Khadour, the plaintiff's treating physician. The plaintiff first saw Dr. Al-Khadour in June 2001. (Tr. 115, 139.) The plaintiff had no complaints and his blood pressure was controlled. (Tr. 115.) On October 24, 2001, Dr. Al-Khadour opined that the plaintiff was not "seriously impaired and unable to work or return to normal functioning for at least 12 months." (Tr. 243.) The plaintiff met with Dr. Al-Khadour in November 2001 and complained of fatigue and an inability to get a job due to his obesity. (Tr. 115.) The plaintiff's blood pressure

remained controlled, and Dr. Al-Khadour recommended diet and exercise for obesity, counseling for use of the C-Pap for obstructive sleep apnea. (*Id.*) On December 3, 2001, after examining the plaintiff twice, Dr. Al-Khadour opined that the plaintiff had obesity, high blood pressure, and sleep apnea which prevented him from performing full-time work. (Tr. 139-43.) In particular, Dr. Al-Khadour opined that the plaintiff could only sit for two hours in an eight-hour workday and that the plaintiff would need to lie down after sitting continuously for two hours; that the plaintiff would need to take unscheduled breaks; and that the plaintiff could only occasionally lift ten pounds. (*Id.*) Dr. Al-Khadour reported that the plaintiff needed to take breaks due to muscle weakness, chronic fatigue, and side effects of medication which made the plaintiff drowsy. (*Id.*) Dr. Al-Khadour's May 6, 2002 treatment note reflects that the plaintiff's blood pressure was "fairly controlled" and that he felt good when he used his breathing machine at night which he did three or four nights per week. (Tr. 211.) Plaintiff's only complaint was chronic right hip pain for which Dr. Al-Khadour prescribed Indocin. (*Id.*) On July 8, 2002, at a regular check-up, the plaintiff reported that the Indocin was helping. (Tr. 210.) Dr. Al-Khadour completed another functional capacity opinion in January 2003. (Tr. 145-50.) He opined that the plaintiff could sit for less than two hours in an eight-hour workday; that the plaintiff would need to lie down at unpredictable intervals; that the plaintiff

could lift no more than ten pounds on an occasional basis; and that the plaintiff would likely be absent from work more than three time per month due to his impairments of obesity, sleep apnea, and hypertension. (*Id.*) When asked to list the plaintiff's prescribed medications and their side effects on the plaintiff, Dr. Al-Khadour wrote, "Tx done by a pulmonologist who will be the best person to answer this question." (Tr. 149.)

With respect to Dr. Al-Khadour's functional capacity opinions, the ALJ wrote:

> "While claimant's physician has offered rather restrictive estimates as to residual functional capacity (Exhibits 5F and 7F), his contemporaneous progress notes are generally absent with regard to any significant abnormalities, the notes focusing largely on claimant's hypertension which was well controlled. As to the hip complaints, there have never been any x-rays taken with regard to such, nor has there been much focus on those complaints in the progress notes either by claimant or any of the physicians examining him. The most detailed examination comes from Dr. Jankins, the Social Security Administration consultant, that physician noting no significant limitations with regard to range of motion other than some slight restrictions related to claimant's obesity. Similarly, neurological examination was generally unremarkable."

(Tr. 18.) Whereas Dr. Al-Khadour opined that the plaintiff could sit no more than two hours in an eight-hour workday, the ALJ determined that the plaintiff could sit up to six hours in an eight-hour workday. (*See* Tr. 17-18.)

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical

findings and consistent with substantial evidence in the record." *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004) (citations omitted). "An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent." *Id.*

In this case, the ALJ sufficiently articulated his rejection of Dr. Al-Khadour's functional capacity determinations. Specifically, the ALJ noted that Dr. Al-Khadour's restrictive functional capacity estimates were inconsistent with his contemporary progress notes. Internal inconsistency in a treating physician's opinion is an appropriate basis to discount the opinion, *see Skarbek*, 390 F.3d at 503, and the plaintiff does not dispute the ALJ's statement that Dr. Al-Khadour's contemporary progress notes are inconsistent with his capacity determinations. (*See* plaintiff's brief, at 10-11.) Neither can the court conclude that the ALJ adopted an unreasonable view of the record. On October 24, 2001, Dr. Al-Khadour opined that the plaintiff was *not* seriously impaired and unable to work, (Tr. 243), but a little more than a month later on December 3, 2001, Dr. Al-Khadour opined that the plaintiff could not sit for more than two hours in an eight-hour workday. Additionally, in Dr. Al-Khadour's first assessment, he states that adverse effects of medication, e.g. drowsiness, is a one reason why the plaintiff needs to take breaks, (Tr. 140-41), but in his second assessment, he

declines to describe any side effects of the plaintiff's medications. (Tr. 149.) The ALJ also referred to a detailed examination by Dr. Jankins, a consulting physician. In his report, Dr. Jankins reports the plaintiff's claim that he can be "on his feet for maybe a couple hours at a time and also can sit for a couple hours at a time." (Tr. 133.) Dr. Jankins also reports that the plaintiff "denies any significant daytime somnolence at this time or he states having mild of what sound like daytime somnolence symptoms." (Tr. 134.) Dr. Jankins concludes, "If anything, I would suspect he would be able to work but at a job that required very low physical endurance." (*Id.*) The ALJ reasonably discounted Dr. Al-Khadour's functional capacity assessments by crediting Dr. Jankins' report. *See Skarbek,* 390 F.3d at 503 ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician . . . .").

Instead of disputing the ALJ's statement that Dr. Al-Khadour's assessments are inconsistent with his progress notes, the plaintiff only disputes the ALJ's statement that there has not been much focus on the plaintiff's hip pain in the progress notes either by claimant or any of the physicians examining him. (Plaintiff's brief, at 10-11.) Dr. Al-Khadour's functional capacity assessments, however, made no mention of the plaintiff's hip pain. (*See* Tr. 139-43, 145-50.) In fact, Dr. Al-Khadour indicated only that chronic fatigue, not chronic pain, was a symptom of the plaintiff's impairments. (Tr. 139.) Even if the ALJ

- 7 -
Case 2:04-cv-01164-JPS   Filed 07/27/05   Page 7 of 14   Document 23

mischaracterized the treatment notes with respect to the plaintiff's complaints of hip pain, that is a matter separate from ALJ's rejection of Dr. Al-Khadour's assessment. Moreover, the plaintiff reported that the Indocin that Dr. Al-Khadour prescribed for the plaintiff's hip pain was helping. (Tr. 210.) Significantly, the plaintiff reported his hip pain to Dr. Al-Khadour, but Dr. Al-Khadour did not mention hip pain as a factor in his functional capacity assessments. Neither is there any indication in Dr. Jankins' report that the plaintiff reported hip pain as a functional limitation.

In his reply brief, the plaintiff raises the argument for the first time that the Commissioner and the ALJ failed to discuss the effects of the plaintiff's obesity on his sleep apnea and the resulting fatigue. The plaintiff's argument is waived and is inaccurate. The ALJ concluded that the plaintiff's "blood pressure is under good control and the sleep apnea is also controlled with C-PAP treatment." (Tr. 18.) The record supports the ALJ's conclusion. Dr. Al-Khadour's May 6, 2002 treatment note reflects that the plaintiff felt good when he used his breathing machine at night which he did three or four nights per week. (Tr. 211.) When seen by Dr. Jankins, the plaintiff denied any significant daytime somnolence. (Tr. 134.) The court has no basis to remand this action based upon the ALJ's rejection of Dr. Al-Khadour's functional capacity assessments.

II.     Credibility determination

The plaintiff argues that the ALJ did not adequately assess the plaintiff's credibility. The ALJ stated: "[W]ithout necessarily minimizing claimant's pain complaints entirely, the undersigned believes that while obviously the obesity is severe, at this point, there have been no complications in conjunction with such, at least resulting in any compromise of claimant's other body systems. Claimant's blood pressure is under good control and the sleep apnea is also controlled with C-PAP treatment." (Tr. 18.) The ALJ concluded, "While claimant may have some degree of pain and limitation, it is not as severe or limiting as claimant has alleged." (Tr. 19.)

At the hearing, the plaintiff testified that he experiences hip pain, (Tr. 264), drowsiness from his medication, (Tr. 264), and trouble sleeping at night due to sleep apnea. (Tr. 265.) He testified that he needs to keep his legs elevated. (Tr. 270.) At one point during the hearing, the plaintiff's attorney asked him, "Have you not worked because you just couldn't find jobs, or are you not able to do work anymore?" (Tr. 276.) The plaintiff responded, "I applied at various places the time I was laid off. It just wasn't no luck." (*Id.*) When asked why he could not perform sedentary work, the plaintiff responded that he would get drowsy and sleepy, and after some prodding by his attorney, the plaintiff agreed that he would also need to elevate his legs. (Tr. 283-84.)

When evaluating the credibility of subjective complaints, an ALJ determines whether the testimony is substantiated by objective medical evidence. *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The other factors that an ALJ considers include: (1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id.*; 20 C.F.R. § 404.1529(c)(3)(i)-(vii). An ALJ, however, is not required to discuss methodically each *Polaski* consideration, *see Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), because "[n]o principle of administrative law or common sense requires [the court] to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("[W]e give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it.") (internal quotations and citations omitted). Still, the ALJ must articulate the basis of the credibility determination. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (holding that Social Security Ruling 96-7p requires an ALJ to specify reasons for credibility finding); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to

rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."); SSR 96-7p. So long as the ALJ bases his credibility determination on *Polaski* factors and articulates the basis of the determination, his credibility determination is entitled to special deference and will not be disturbed unless it is "patently wrong." *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *see also Carradine v. Barnhart*, 360 F.3d 751, 754-56 (7th Cir. 2004) (reversing ALJ's credibility determination where the ALJ's reasoning contained "serious errors in reasoning" and "deep logical flaws").

In this case, the ALJ based his credibility determination on the relevant factors, articulated his reasoning, and did not arrive at a conclusion that is patently wrong. With respect to the plaintiff's complaints of hip pain, the ALJ appropriately compared the plaintiff's complaints to the objective medical evidence. *See Scheck*, 357 F.3d at 703 (considering the objective medical evidence should be one factor in the ALJ's credibility determination). Specifically, the ALJ noted that no x-rays were ever taken of the plaintiff's hip. (Tr. 18.) The ALJ also reviewed the progress notes and determined that the plaintiff's complaints of hip pain were not emphasized by the plaintiff or his examining physicians. (*Id.*) The plaintiff disputes this finding, but the record supports the ALJ's determination. (See Tr. 133-34, 139-43, 145-50, 210.) Nevertheless, the ALJ accounted for the

- 11 -
Case 2:04-cv-01164-JPS   Filed 07/27/05   Page 11 of 14   Document 23

plaintiff's alleged difficulties walking and standing by determining that the plaintiff had the capacity to perform no more than sedentary work with the ability to change positions every 45 minutes. (Tr. 19.) Also, when asked why he could not perform sedentary work, the plaintiff did not cite hip pain as a reason; instead, he merely said that he would get drowsy and sleepy. (Tr. 283-84.)

With respect to getting drowsy and sleepy, the ALJ concluded that the plaintiff's sleep disorder is also controlled with the plaintiff's breathing machine. (Tr. 18.) While the ALJ could have provided more analysis on this point, the record supports the ALJ's conclusion. (Tr. 134, 211.) At the hearing, the plaintiff testified that he uses his breathing machine regularly, (Tr. 265), and he did not claim that he suffers symptoms when he uses the machine. (Tr. 269-70.) The ALJ's opinion that the plaintiff's sleep disorder is controlled with the C-PAP machine is not in conflict with the plaintiff's testimony regarding symptoms of his sleeping disorder. The plaintiff testified that he sleeps two or three hours during the day and that Dr. Al-Khadour's assessments are consistent with the plaintiff's daytime sleepiness. The ALJ, however, appropriately discounted Dr. Al-Khadour's assessment, and the ALJ is not required to address each one of the plaintiff's statements as long as the court can trace the path of the ALJ's reasoning. *See*

*Rohan*, 98 F.3d at 971. The ALJ's determination that the plaintiff's sleeping disorder is controlled is not patently wrong. *See Powers*, 207 F.3d at 435.[1]

With respect to the plaintiff's alleged need to elevate his legs, the ALJ stated that "there is nothing in the record to suggest such restriction." (Tr. 18.) Dr. Al-Khadour, in fact, expressly denied that the plaintiff's legs needed to be elevated. (Tr. 141.) The ALJ's credibility determination as to the plaintiff's alleged need to elevate his legs is not patently wrong.

Finally, the plaintiff takes issue with the following statement in the ALJ's decision: "The undersigned believes that claimant's primary problem is his obesity. There is no evidence to suggest that claimant has done much to address that problem, weight remaining quite high." (Tr. 18.) The plaintiff quite rightly points out that results in weight loss don't always walk hand-in-hand with efforts to lose weight. *See, e.g., Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) ("[T]he administrative law judge may have been hinting that Barrett should lose weight, that obesity is like refusing to wear glasses or a hearing aid--essentially a self-inflicted disability . . . ."). The ALJ's inference that the plaintiff had not

---

[1]Even if the ALJ's articulation of this issue could have been expanded, "[n]o principle of administrative law or common sense requires [the court] to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result." *Fisher*, 869 F.2d at 1057; *Shramek*, 226 F.3d at 811 ("[W]e give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it."). At the hearing, the plaintiff implied that he had taken medication which made him drowsy earlier in the day before his hearing, (Tr. 264-65), but later stated that he had not taken medication on the day of the hearing. (Tr. 268.) If the ALJ had relied upon the plaintiff's testimony, the court would have been hard-pressed to find the ALJ's opinion to be supported by substantial evidence.

attempted to lose weight, therefore, is not well taken. That unfortunate comment, however, stands apart from the ALJ's otherwise careful consideration of the record in evaluating each of the plaintiff's alleged symptoms. Considering all of the evidence of record, the ALJ could have reasonably determined that the plaintiff's impairments, individually or in combination with each other, did not render the plaintiff under a disability.

Because the ALJ's findings are supported by substantial evidence, the court denies the plaintiff's appeal of the Commissioner's decision to deny the plaintiff DIB and SSI benefits.

Accordingly,

IT IS ORDERED that the plaintiff's appeal of the Commissioner's decision be and the same is hereby DENIED;

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this  27th  day of July, 2005.

BY THE COURT:

s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge